JOSEPH L. HUDSON AND CAMPBELL SYMINGTON v. MARY C. ROOS.

[See 76 Mich. 173.]

*Sale—Sample—Particular purpose—Latent defects—Return of property—Findings of fact.*

1. A vendee who discovers a *latent* defect in an article purchased by sample, and for a particular purpose, known to the vendor, after its delivery, may return it to the vendor.
2. The Court reverse the judgment in this case for want of necessary findings of fact, treating it as a mistrial.

Error to Wayne. (Gartner, J.) Argued October 12, 1888. Decided November 1, 1888.

*Assumpsit.* Defendant brings error. Reversed. Th[e] facts are stated in the opinion.

*Larned & Larned,* for appellant.

*H. C. Wisner,* for plaintiffs.

MORSE, J. This case was tried before Hon. George Gartner, one of the circuit judges of Wayne county, on the 11th of June, 1888, without a jury. The court filed

written findings of fact, and entered judgment in favor of the plaintiffs for $208.28 and costs.

The first error assigned is this: The cause had regularly been assigned, according to the practice of the court, for trial as a jury case on the 8th day of June, 1888. When that day arrived the defendant's counsel was engaged in the recorder's court, in a criminal trial. The court refused to hold the case open until defendant's counsel was at liberty from the criminal trial. The counsel thereupon, to prevent the case going by default, consented to try the case on the following Monday, June 11, without a jury, not waiving their objection to the refusal of the court to hold over or adjourn said cause until counsel was disengaged from the case then on trial in the recorder's court. Neither did they waive their right to a jury trial. This is the claim of the facts set out in the brief of defendant's counsel of the proceedings on the 8th of June.

We must be governed by the bill of exceptions. The bill states that the case was assigned for jury trial, June 8, 1888; that on that day defendant's counsel was engaged in the recorder's court, in the trial of *People v. Margaret Harrison*, for a felony; that, on the calling of the case, the court, on *application of defendant's counsel*, set said case down for trial by the court June 11, 1888. No record of any application to have the case held over or adjourned, nor any refusal of the court to do so, appears, and no objection to a trial before the court was made, either on the 8th or 11th of June. No exception to the proceedings was taken. The jury was as completely waived as possible, and nothing appears in the record but what such waiver was a voluntary one.

The main controversy in the case was over a large pierglass,—one of three, the other two being small ones; the price of the glasses being agreed upon at $125 for the

three.   The glasses were accepted and delivered apparently all right.   Subsequently defects were noticed in the large glass.   These defects were in the silvering.   The plaintiffs, upon being notified of the defects, took the glass away, with an agreement to replace it.   The glass was shipped to New York to be resilvered.

There is a dispute between the parties as to the length of time before it was to be replaced.   The mirrors were first put up in the store of the defendant July 4, 1887. Madame Roos claims that the mirror, when taken away, was to be replaced within two or three weeks.   There was no agreement that it must be done in that time, but plaintiffs promised that it would be back in that time. She waited from about the middle of July until the 6th of September, importuning them at different times to hurry up with the glass, as she was in great need of it.

In the early part of September she notified plaintiffs that she was going to New York, and that, if the mirror was not put in before she went, she should buy one in New York.   On the 6th of September, being in New York, she wrote to her manager to find out if plaintiffs had replaced the mirror, and told him to go to them, if it had not been put in, and tell them that she had bought one in New York, and they need not replace it. On that day she picked a mirror out in a New York store.   Her manager told plaintiffs what she requested him to, and telegraphed her to that effect.   He wrote to her to the same effect, and on receipt of the letter she bought the New York glass.   Afterwards the plaintiffs tendered her the mirror they took away, resilvered, and apparently without defects.   She refused to receive it.

The court found that the pier-glasses were ordered by the defendant of the plaintiffs, and the price agreed upon; that they were delivered, and accepted by her; that although a latent defect was afterwards discovered, which

plaintiffs undertook to remedy, this did not relieve the defendant of her liability to pay for them.    This finding is erroneous in law, and contains no determination of the disputed facts.    The plaintiffs' testimony tended to show that no time was stated in which they were to return the mirror, but that the defendant was informed that, as soon as it could be done, the mirror would be resilvered by the manufacturers and put up again.    She knew that it had to be sent away to the manufacturers, and consented it might be done.    There were no defects except in the silvering, and these could not be seen or detected at the time the mirror was delivered.

If the defendant's testimony was accepted by the court as true, she was not bound to take the glass unless returned within the time promised.    If the plaintiffs' evidence was taken as true, they were entitled to a reasonable time in which to return the mirror, resilvered. The court should have found which was the correct version of the transaction.

Under the law as found by the court, the defendant was not entitled to reject the mirror, because she accepted it in the first place, when the defects were not apparent. This is not the law.    The defects were latent, but, when discovered, the defendant was not bound to keep the mirror.    She had purchased it for a particular purpose, known to plaintiffs, and by sample.    If she agreed to have it resilvered and returned, instead of rejecting it, she would be bound by such agreement as far as it went, but no further.    As there was no finding of fact, we cannot determine the case here, but must treat it as a mistrial.

The judgment of the court below must be reversed, with costs, and a new trial granted.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred.    CAMPBELL, J., did not sit.