## FRICK CO. v. BOLES.

### (Filed 14 April, 1915.)

1. **Contracts—Breach of Warranty—Conditions—Compliance.**

    Where the seller of certain machinery sues upon notes given for the balance of its purchase prices, and the defendant alleges a counterclaim for damages upon a breach of warranty, expressly providing that notice of a failure to satisfy the warranty should be given the plaintiff in five days, affording him opportunity to make necessary changes and allowing the defendant to return the machinery if not made to conform to the warranty; and it appears that the defects complained of were apparent and discovered by the defendant within the five days specified, and he did not notify the plaintiff thereof, which he had ample opportunity to do, but kept the machinery and did not complain until action brought, the defendant cannot successfully rely upon the breach of the warranty, and judgment thereon should be rendered in the plaintiff's favor.

2. **Contracts—Breach of Warranty—Conditions—Pleadings—Proof—Issues.**

    Where a warranty in a contract for the sale of goods requires that notice of a failure of the goods to satisfy the warranty be given the seller in five days, etc., an issue as to the reasonableness of the notice should not be submitted to the jury, in an action on the warranty, in the absence of allegation and proof thereof, and when defendant knew of the breach within the five days.

APPEAL by plaintiff from *Lyon, J.,* at August Term, 1914, of SURRY.

Action to recover the balance due on notes executed for the purchase price of certain machinery and to subject certain property conveyed to the payment thereof.

On 25 June, 1908, the plaintiff through its agent, Dellinger of Salisbury, together with E. A. Griffith of Winston-Salem, sold to the defendant Boles a portable engine and thresher, the purchase price to be $875. The machine was delivered on 6 July, 1908, and the defendant paid cash $100 at the time of the delivery, and executed three notes of $194, all dated 6 July, 1908, and due as follows: 1 November, 1909, 1 November,

. 1910, and one note for $193 due 1 November, 1911, and also a deed of trust in which the defendant secured said notes by the conveyance of the engine and attachments and the thresher and attachments for which the notes were executed as purchase money. It was admitted by the plaintiff that in addition to the $100 cash, that the defendant Boles had paid all of the purchase-money notes except $194 due 1 November, 1910, and on this note he had paid 13 April, 1911, $27.92, and on 22 May, 1911, he had also paid $38.96, and also a further unpaid note for $193 due 1 November, 1911.

The material parts of the contract of sale are as follows:

Frick Company makes the following warranty with respect to machinery above mentioned, towit:

1. That it is well built, of good material, and when properly operated will, under like conditions, perform as well as any other machinery of the same size and rated capacity.

2. If after notice as hereinafter provided, and opportunity given to make machinery fulfill terms of warranty, it fails to make said machine or attachment, or defective part thereof, perform according to contract, it agrees to take back such machine or attachment, or defective part, and at its option refund the money, notes, etc., received therefor, or replace the same.

3. If any part of the machinery proves to be defective within six months after being put into operation, it will furnish a duplicate thereof free, except freight, if said part is properly presented to agent through whom purchased, or at factory, and such defect clearly appears to be due to workmanship or material.

The purchaser agrees as follows, towit:

(*a*) If machinery does not fulfill terms of warranty, to give notice in writing to the agent through whom purchased, and by registered letter to Frick Company, Waynesboro, Pa., within five days from first putting same in operation, stating in what respect said machinery fails to perform. If defects reported are such as can be remedied by purchaser, Frick Company may, by letter, suggest remedy. If such purchaser still fails to make same perform, he will immediately notify Frick Company again, at Waynesboro, Pa., by telegram or registered letter, and allow reasonable time to remedy defects, rendering at all times friendly assistance.

(*b*) To return machinery to place where received, if Frick Company fails, after notice as above, to make same fulfill terms of warranty.

(*c*) If machinery is used longer than five days from first putting same in operation, without notice of failure to fulfill warranty as required in paragraph (*a*) above, or if used at all after Frick Company is alleged to have failed to remedy defects, it shall operate as an acceptance of same and as a fulfillment of the terms of warranty.

The jury returned the following verdict:

1. In what amount is the defendant indebted to the plaintiff? Answer: "$160.61, with interest on same from 22 May, 1911, and $193, with interest on same from 6 July, 1908."

2. Is the plaintiff entitled to the possession of the property? Answer: "Yes."

3. Did the defendants give notice in writing to the agent through whom he purchased the machinery and by registered letter to the plaintiff at Waynesboro, Pa., within five days from first putting same in operation, stating that the machinery was defective, and in what respect it was defective, and asking the plaintiff to remedy the defect? Answer: "No."

4. If so, did plaintiff, after such notice from defendant, induce the defendant to keep and operate the machinery and try to remedy such defects? Answer: "No."

5. Was five days a reasonable time in which to test the machinery delivered to defendant? Answer: "No."

6. Did the machinery delivered by the plaintiff to defendant come up to the specifications and requirements of the written contract? Answer: "No."

7. What was the difference between the value of the machinery as delivered to defendant and its value, had it come up to contract? Answer: "$200."

The plaintiff excepted to the submission to the jury of the fifth, sixth, and seventh issues.

The plaintiff moved for judgment on the first, second, third, and fourth issues, which was refused, and it excepted.

Judgment was entered upon the verdict, and the plaintiff appealed.

*Watson, Buxton & Watson, and Winston & Biggs for plaintiff.*
*J. H. Folger for defendant.*

ALLEN, J. There was error in submitting the fifth issue to the jury, because there is neither allegation nor proof that the time provided in the contract was not a reasonable time for the examination of the machinery purchased, and the question as to whether five days is a reasonable time in contracts like the one before us does not arise.

On the contrary, the evidence introduced by the defendant shows that he knew of the defects of which he now complains, if they existed, on the first day the machinery was operated, and that instead of its condition improving, it grew worse.

The defendant himself testified "that Dellinger, the agent, was present when the machinery was set up; that the machine cut the grain of the wheat as it threshed, and defendant told him about it; Dellinger said he would remedy that; he took out one of the concaves, and after this was

done he discovered that the wheat was left in the straw and it would go out of the gin with the straw and chaff to some extent; that he ran the machine, but it got worse; the engine would not pump; it was hard to make it steam; the center crank was always bending; the pump would not force water into the boiler"; and the brother of the defendant testified "that the machine did not do good work at the start; that he heard his brother tell Dellinger that it did not work, and he saw him take out the concave and tell him that it would get better; but in the opinion of the witness, it got worse, and never threshed more than half of the wheat a machine should thresh; it would get hot and stop, and a good deal of time was wasted; it didn't have the power; that he threshed his wheat the second season and he could see no difference; it wasted the wheat."

If, therefore, the defendant knew within the five days provided for in the contract that the machinery did not fulfill the terms of the warranty of the plaintiff, it became his duty to notify the plaintiff, as he had agreed to do, in order that the plaintiff might make repairs or supply him with new machinery, and upon failure of the plaintiff to perform this duty, he agreed that he would return the machinery.

The jury has found without objection upon the part of the defendant that he failed to give this notice, and if so he cannot under the authorities have relief upon his alleged breach of warranty. *Moore v. Piercy,* 46 N. C., 131; *Main v. Field,* 144 N. C., 307; *Piano Co. v. Kennedy,* 152 N. C., 197; *Robinson v. Huffstetler,* 165 N. C., 459; *Oltman v. Williams,* 167 N. C., 314.

In *Robinson v. Huffstetler, supra,* the Court, after citing with approval 35 Cyc., 437, and *Mfg. Co. v. Lumber Co.,* 159 N. C., 510, says: "It seems, therefore, to be settled that when there is an express warranty in the sale or exchange of personal property, and it is a part of the contract of sale that the property is to be returned within a specified time, if not as warranted to be, that the complaining party can have no redress by reason of the warranty, in the absence of fraud, without offering to return the property within the time named"; and in the later case of *Oltman v. Williams,* "It is well settled that a party relying upon and setting up a written warranty of quality in the sale of personal property is bound by the terms of that warranty and must comply with them in order to be entitled to redress in an action to recover the purchase price. *Bank v. Walser,* 162 N. C., 54; *Main v. Griffin,* 141 N. C., 43; *Robinson v. Huffstetler,* 165 N. C., 459."

Not only did the defendant fail to give notice to the plaintiff, but it appears from the record that fifty-seven letters passed between them, beginning in November, 1908, and ending in September, 1911, and that in no letter written by the defendant did he make complaint that the machinery did not satisfy the terms of the warranty. He repeatedly re-

168—42

quested indulgence upon his notes, made frequent promises to pay, and represented the machinery to be in good condition. He wrote the plaintiff on 25 November, 1908: "I will certainly pay you if you can wait on me; if not, you will have to take the machine. It is in good condition." On 9 January, 1909: "I hope the company will wait on me a while longer. The machine is in good shape and was not used but a short time." On 22 January, 1909: "I am not in shape to pay out now, but if you will give me a chance I will certainly pay you; and if you can't wait, here is the machine in good shape, well cared for, nothing broken in any way." On 1 November, 1909: "Do the best you can for me, for I am in a very close place for money. The machine is in good condition, well cared for." On 3 January, 1910: "Hope you can wait on me a little while longer. The machine is in nice shape, in good condition."

It also appears from the evidence of the defendant that the thresher was burned in 1910 and that he collected the insurance money of $150, and he only claims to have paid $100 of the insurance to the plaintiff, and that since the commencement of this action he sold the engine and recommended it "good of its kind" to the purchaser.

If, therefore, the machinery did not satisfy the terms of the warranty, and the defendant knew of the defects within the five days stipulated in the contract, and if he failed to give notice to the plaintiff in order that it might make such changes as were necessary, and if the contract required the defendant to return the machinery if such changes were not made, the defendant cannot now, after retaining the machinery three or four years, without complaint, rely upon a breach of the warranty; and it was therefore error to submit the sixth and seventh issues to the jury and the plaintiff was entitled to judgment upon the first, second, third, and fourth issues.

Reversed.